**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAKEVIEW PHARMACY OF RACINE, INC.,** | : | |
| | : | |
| **Plaintiff,** | | **CIVIL ACTION NO. 3:15-0290** |
| | : | |
| **v.** | | |
| | : | **(JUDGE MANNION)** |
| **CATAMARAN CORPORATION,** | | |
| | : | |
| **Defendant** | | |

## MEMORANDUM

Pending before the court is the plaintiff, Lakeview Pharmacy of Racine, Inc.'s First Motion for Leave to Amend the Complaint. (Doc. 30). Based upon the court's review of the motion and related materials, the motion to amend will be **GRANTED IN PART** and **DENIED IN PART**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This action was originally filed by the plaintiff, Lakeview Pharmacy of Racine, Inc. ("Lakeview" or "plaintiff"), along with twenty-eight other independently owned community pharmacies, against the defendant, Catamaran Corporation, for breach of contract under the Uniform Commercial Code (Count I), and in the alternative for breach of common law contract for acting in bad faith in setting prices for prescription drugs (Count II), and the pharmacies also included a claim for breach of common law contract for bad faith responses to successful MAC (maximum allowable cost) pricing appeals (Count III) and for bad faith in failing to update MAC prices (Count IV). (Doc.

1). The plaintiffs attached to the complaint a copy of the Provider Manual, (Doc. 1, Ex. 1), which along with the Provider Agreement forms the contract between the parties. In the original complaint, the plaintiffs sought damages based on breach of contract and specific performance such that Catamaran will "set in good faith reimbursement rates for generic drugs and make adjustments to MAC prices at a commercially reasonable speed." (Doc. 1, p. 37).

On April 20, 2015, the defendant filed a Motion to Dismiss Non-Arbitrable Claims and to Compel Arbitration. (Doc. 11). The plaintiff, Lakeview, submitted a brief in opposition to the motion on May 4, 2015, (Doc. 13), to which the defendant filed a brief in reply on May 18, 2015. (Doc. 15). On July 16, 2015, we partially resolved the defendant's motion by granting the motion to compel arbitration with respect to all parties except for Lakeview. (Doc. 20). Then, on December 9, 2015, the court granted in part and denied in part, the Defendant's motion to dismiss. (Doc. 29). Specifically, the court granted the defendants motion to dismiss with respect to Counts I, II, and IV, but denied the motion to dismiss with respect to Count III. *Id.*

On December 23, 2015, the plaintiff filed the instant motion to amend the complaint, (Doc. 30) and a supporting brief, to which it attached the Proposed Amended Complaint and a redlined version of the Proposed Amended Complaint. (Doc. 31). The Proposed Amended Complaint removes all facts and allegations related to the independent pharmacies that are no

longer parties to this action. It also includes: Count I, which "re-pleads [the plaintiff's] UCC count to bring it in line with this Court's assessment of the Illinois UCC and *3Com Corp. V. Electronic Recovery Specialists, Inc.*"; Count II, in which the plaintiff asserts three theories of liability based on the breaches of express contract terms; Count III, which remains the same; and Count IV, where the plaintiff asserts a claim for quantum meruit. (Doc. 31, pp. 3-4). Finally, the Proposed Amended Complaint removes claims regarding violations of implied covenants governing MAC pricing (Counts II and IV from the original complaint), as this court dismissed them previously. *Id.* at 4.

On January 11, 2016, the defendant filed a brief in opposition to the plaintiff's motion to amend the complaint. (Doc. 32). The defendant argues that proposed Count I fails to cure the defects of the original UCC claims, and further that Counts II and IV are futile as they fail to state a claim upon which relief can be granted. (Doc. 32, p. 2). The plaintiff then filed a Reply Brief on January 25, 2016. (Doc. 33).

Having received and reviewed briefs from both parties, the motion is now ripe for decision.

## II. MOTION TO AMEND STANDARD

The plaintiff's motion to amend is brought pursuant to the provisions of Fed.R.Civ.P. 15. The filing of an amended complaint is governed by Fed. R. Civ. P. 15(a):

> (1) *Amending as a Matter of Course*. A party may amend its pleading once as a matter of course within:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2) *Other Amendments*. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a). This court's Local Rules require that a proposed amended pleading must accompany a motion. *See* Local Rule 15.1(a). The "amended pleading must be retyped or reprinted so that it will be complete in itself." *Id.* Here, the plaintiff attached a proposed amended complaint to its motion. (Doc. 31, Ex. 1).

The United States Court of Appeals for the Third Circuit has adopted a liberal approach to the amendment of pleadings in order to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 486–87 (3d Cir. 1990). Amendment, however, is not automatic. *See* Dover Steel Co., Inc. v. Hartford Accident and Indent., 151 F.R.D. 570, 574 (E.D. Pa.1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the

allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); *see also* Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000). Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See* In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ("In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal

evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

## III. DISCUSSION

As stated, the plaintiff seeks to amend its complaint by re-pleading Count I, adding two new claims (Counts II and IV), and removing all factual allegations relating to the now-dismissed parties. The defendant does not oppose removal of factual allegations relating to the other independent pharmacies that are no longer parties to the action. However, the defendant opposes all other proposed amendments on grounds of futility.[1] Specifically, the defendant argues that the plaintiff's proposed Count I is simply an attempt

---

[1] The court notes that the defendant solely opposes the plaintiff's motion to amend the complaint on the basis of futility. Given that the defendant does not argue "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment," Foman v. Davis, 371 U.S. 178, 182 (1962), and the court does not find any of those reasons for denial of a motion to amend applicable, they are deemed irrelevant and the court will not address them in this opinion.

to re-plead its UCC claims, which the court previously held failed to state a claim. Finally, the defendant argues that the plaintiff's new claims for breach of express contract terms and quantum meruit also fail to state a claim and would be futile. The court will examine each proposed claim and determine whether the plaintiff states claims upon which relief may be granted.

**A. UCC Claim**

The plaintiff's Proposed Amended Complaint contains the same UCC claim that was present in its original complaint, namely that the defendant's conduct is governed by Section 2-305 of the UCC. Under Section 2-305, the defendant would be required "to act in good faith in setting reimbursement rates that are commercially reasonable." (Doc. 1, ¶ 135); (Doc. 31, Ex. 1, ¶ 111).

In the December 9, 2015 memorandum and order, this court stated the following:

> Article 2 of the UCC solely governs "transactions in goods." 810 ILCS 5/2-102. "Goods" for the purposes of Article 2 are "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale." *Id.* at 5/2-105. As the plaintiff states, and the defendant does not dispute, prescription drugs are "goods" under Article 2. Article 2 does not apply to contracts for services. *Id.* at 5/2-102; *see also* Armagan v. Pesah, 7 N.E. 3d 148, 160 (App. Ill. 2014).
>
> The term "transactions in goods" generally refers to transactions involving sales of goods, but Illinois law indicates that in specific circumstances the term may include situations where a sale does not occur. *See* In re Pearson Indus., 147 B.R. 914, 922 (Bankr. C.D. Ill. 1992). The plaintiff in this case argues that the term "transactions in goods" is vast enough to encompass cases where

> the contract in question solely has a significant effect on or is closely related to a separate sale of goods. (Doc. 1, ¶130); (Doc. 13, pp. 5-7). However, the case-law that supports an expanded definition of transaction does not stretch the definition as far as the plaintiff would like.
>
> . . .
>
> Ultimately, the court finds that the law only provides a cause of action under the Article 2 if the contract at issue involves a "transaction in goods," and taking the facts alleged in the Complaint to be true, there are no facts to establish a relationship between the plaintiff and defendant that involves a sale of goods or that fits into the minimally expanded definition of "transaction in goods" for the purpose of Article 2. Rather, the contract solely involves services provided by the defendant.

(Doc. 28, pp. 8-9, 12). Again, in order to trigger the provisions of the UCC, the plaintiff must allege facts sufficient to demonstrate that the parties' contract involved a "transaction in goods." Rather than include additional factual allegations to support a finding that the parties' relationship involved a "transaction in goods," the plaintiff slightly modifies the language and adds conclusory allegations, which it purports align with this Court's previous ruling and interpretation of the case-law. (Doc. 31, p. 8).

Specifically, in Count I of the Proposed Amended Complaint, the plaintiff alleges that "[t]he sale of pharmaceutical products by Lakeview to members of Catamaran's plan-sponsor customers are 'transactions in goods.'" (Doc. 31, Ex. 1, ¶ 103). First, characterizing these transactions as "transactions in goods" for the purpose of Article 2 of the UCC is a legal conclusion, not a factual allegation, and the court, therefore, need not accept this fact as true

in analyzing the UCC claims. Second, even if this statement were taken to be true, it focuses on the plaintiff's relationship with its customers. While those customers may be plan members of a plan-sponsor with which Catamaran deals, they are customers who make purchases of pharmaceutical products from the *plaintiff*, not the defendant. The transactions do not impact the contract and relationship between the plaintiff and defendant.

The plaintiff also modified the language in the Proposed Amended Complaint to read: "The predominant purpose of the contractual relationship between Plaintiff and Catamaran—governed by the Provider Agreement, the Provider Manual, and other documents . . . —is to *facilitate and regulate the sale of pharmaceutical products*." (Doc. 31, Ex. 1, ¶ 104) (emphasis added). The plaintiff cites to this new language in its brief as support for finding that the contract between the parties involves a transaction in goods, and not services. The language, however, is synonymous with the language of the original complaint and fails to affect the legal analysis and lead to a different result.[2] The verbs, "facilitate" and "regulate," clearly refer to services that the

[2] The original complaint stated: the "predominant purpose of the contractual relationship between each of Plaintiffs' stores and Catamaran—governed by the Provider Agreement, the Provider Manual, and other documents . . . —is to *outline the parameters of, and to effect, reimbursement to Plaintiffs on their sales of prescription drugs*." (Doc. 1, ¶ 130) (emphasis added). The words "facilitate" and "regulate," which are used in the plaintiff's Proposed Amended Complaint, are simply more general manners of describing the defendant's relationship and services rendered. Acting to facilitate and regulate the sale of pharmaceutical products

defendant provides to the plaintiff. And the "sale of pharmaceutical products" refers to the plaintiff's sales to independent customers, not sales of pharmaceutical products to the defendant. In the end, the plaintiff's modified language and conclusory allegations do not comport with this court's interpretation of the relevant case-law any better than the original allegations, and therefore, do not disrupt this court's previous finding that the plaintiff has failed to allege a claim under Article 2 of the UCC. Thus, the plaintiff's amended UCC claim would be futile, and as a result, the court will deny the plaintiff's motion to amend the complaint to include a claim under Article 2 of the UCC (Count I of the Proposed Amended Complaint).

**B. Breach of Contract Claims**

The plaintiff next proposes to add "Count II," a new claim which "advances three theories of liability based on breaches of express terms of the contract (as opposed to abuse of contractually prescribed discretion), including those terms related to the use of a single MAC price and the independent metrics that are supposed to inform Catamaran's MAC pricing." (Doc. 31, p. 3). The defendant argues that the terms of the contract itself contradict and negate the plaintiff's allegations, and, as a result, the plaintiff fails to state a claim for breach of contract. (Doc. 32, p. 7). Under Illinois law,

---

constitutes a service, and the only difference between this language in the proposed complaint is that it leaves out the details regarding *how* the defendant facilitates these sales.

the plaintiff must allege facts sufficient to demonstrate the following elements for a breach of contract cause of action: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." Association Ben. Services, Inc. v. Caremark RX, Inc., 493 F.3d 841, 849 (7th Cir. 2007) (internal quotations omitted). The only element in dispute is whether there was a breach of the contract.

When interpreting a contract, "the primary goal . . . is to give effect to the intent of the parties and in determining the intent of the parties, a court must consider the contract document as a whole and not focus on isolated portions of the document. If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract document itself, which should be given its plain and ordinary meaning, and the contract should be enforced as written." Pharmaceutical Horizons, Inc. v. SXC Health Solutions, Inc., 2012 WL 1755169, at *2 (N.D. Ill. 2012) (internal citations and quotations omitted).

**1. Defendant's Use of Three Separate Reference Points**

In the plaintiff's first theory for breach of contract, it alleges that the contract provides, "Catamaran shall utilize client or plan parameters, Medi-Span or other national source, and internal processes as a reference but not as the sole determinant of price," (Doc. 31, Ex. 1, ¶ 118) (quoting Doc. 1, Ex. 1, p. 6)), and that the defendant does not use any of the listed sources as a

reference for price when calculating reimbursements to the plaintiff. *Id.* ¶ 119. The defendant specifically refutes this argument by claiming that failure to use these sources to determine price does not constitute a material breach of the contract because, as the contract states, they are not the sole determinants of price. (Doc. 32, p. 11). Reading from the Provider Manual provided as an Exhibit to the plaintiff's original complaint, (Doc. 1, Ex. 1), the court finds that the contract provision quoted by the plaintiff is unambiguous and plainly states that the defendant is required to "utilize" the three categories of listed sources when determining reimbursement prices. The provision states that while the defendant is obligated to use the listed sources as references, these sources are not the "sole determinants" of price. This plainly means that the defendant may use other resources when determining reimbursement rates *in addition to* the required sources listed, but it does not mean the defendant may disregard or fail to take into account the three listed sources, as the defendant argues in its brief. Given the plain meaning of this contract provision and the factual allegations provided in the plaintiff's Proposed Amended Complaint, the court finds that the plaintiff has provided sufficient facts to state a claim for breach of contract based upon the defendant's alleged failure to "use 'client or plan parameters, MediSpan or other national source, and internal processes as a reference.' " (Doc. 31, Ex. 1, ¶ 119).

The plaintiff also asserts that the defendant is in breach of contract because it fails to use other nationally recognized reference base price

sources as market conditions warrant. However, the provision of the Provider Manual to which the plaintiff refers to support the stated assertion states the following: "Other nationally recognized referenced based price sources *may* also be implemented as market conditions warrant." (Doc. 1, Ex. 1, p. 5) (emphasis added). This language is clear; the provision is not mandatory, instead it is solely permissive. If market conditions warrant, then the defendant *may* use other nationally recognized sources, in addition to the mandatory sources listed in the agreement for determining reimbursement price. Because this provision is permissive, the court finds that plaintiff's allegations that the defendant failed to "implement '[o]ther nationally recognized reference based sources' despite market conditions warranting as much," (Doc. 33, Ex. 1, ¶ 119), does not constitute a breach, as it is within the defendant's rights under the contract to do so. Thus, the plaintiff fails to state a claim for breach of contract on this ground.

**2. Setting Reimbursement Prices Below Acquisition Costs**

The second theory upon which the plaintiff seeks to state a claim for breach of contract, relates to whether the contract allows the defendant to set reimbursement prices below the plaintiff's acquisition costs. (Doc. 33, Ex. 1, ¶ 118). The plaintiff specifically contends that the contract agreement compels the defendant to set reimbursement price at a rate that is not lower than the plaintiff's acquisitions costs. In support of this argument, the plaintiff cites to the Provider Agreement, which states: "Reimbursement will be limited by the

pharmacies submitted ingredient cost plus dispensing fee." (Doc. 33, Ex. 1, ¶ 118). The plaintiff then goes on to state that the defendant does not "limit" or "factor in" the plaintiff's ingredient cost plus dispensing fee. *Id.* ¶ 119. The defendant's response to this allegation is that the abovementioned provision "does not require that Catamaran set reimbursements in amounts that exceed Lakeview's acquisition costs and does not preclude reimbursement below its ingredient cost." (Doc. 32, p. 10).

While the defendant may be correct that the plain language of the contract does not explicitly require that it set reimbursement prices that exceed ingredient cost, the plain language does explicitly require that reimbursements "be limited" by ingredient cost and dispensing fee. Thus, the plain language requires that the ingredient cost and dispensing fee at the very least be considered and in some way limit the reimbursement cost. The plaintiff alleges that a breach exists not only due to the defendant's failure to set reimbursement rates above ingredient costs, but also exists because the defendant does not "limit" or "factor in" ingredient costs or dispensing fees at all when determining reimbursement. Taking these allegations to be true, they are sufficient to state a claim for breach of contract based upon the defendant's failure to factor in or limit reimbursement costs by ingredient costs. Thus, the plaintiff's breach of contract claim is not futile and will not be dismissed at this stage of litigation.

**3. Failure to Set a Single Reimbursement Amount**

In the plaintiff's final theory for breach of express terms of the contract, the plaintiff claims that "the contract between the parties requires that there . . . be a single reimbursement amount or Maximum Allowable Cost for a particular drug filled in particular quantity at a particular time for a member of a particular insurance plan." (Doc. 31, Ex. 1, ¶ 122). As support for this assertion, the plaintiff quotes language from the Provider Manual and Provider Agreement. Specifically, the plaintiff states that the contract "provides that Catamaran will pay 'Maximum Allowable Cost.' " *Id.* ¶ 124 (emphasis in original). The lack of a plural suffix, the plaintiff claims, demonstrates that there must be only *one* MAC price or reimbursement amount. The plaintiff finally alleges that the defendant breaches this term of the contract by using MAC prices at the same time. (Doc. 31, Ex. 1, ¶ 125).

The defendant, on the other hand, contends that the Provider Agreement explicitly contradicts the plaintiff's claim. In its brief in opposition, the defendant cites to the Provider Agreement, which states that reimbursement prices "vary from Plan to Plan," (Doc. 32, p. 8); however, the defendant does not attach or provide the court with the Provider Agreement itself, and neither does the plaintiff. Without attaching the agreement itself to its motion to dismiss,[3] the court cannot take the excerpts from the Provider

---

[3] Had the defendant attached the Provider Agreement to its opposition to the motion to amend, the court would have been able to consider the

Agreement to be true, and therefore they cannot refute factual allegations set forth in the Proposed Amended Complaint.

Considering the language cited by the plaintiff and the Provider Manual attached to the plaintiff's original complaint, the court cannot say that the language allows the defendant to set more than one MAC price. Taking the plaintiff's factual allegations to be true regarding the contract's language and the defendant's behavior, the court finds that the plaintiff sufficiently states a claim upon which relief may be granted, and the amendment to include this claim in the complaint is not futile.

**C. Quantum Meruit Claim**

Finally, the Proposed Amended Complaint includes a new claim based on a theory of quantum meruit (Count IV), pled in the alternative. The plaintiff, specifically, claims that the defendant's ability to set the MAC price at

---

document and facts contained therein. When determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules, the court must "generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004) (citing In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)), *abrogated in part on other grounds by* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007); *see also* Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). "A document forms the basis of a claim if the document is 'integral to or explicitly relied upon in the complaint.'" *Sands*, 502 F.3d at 268 (quoting *In re Burlington*, 114 F.3d at 1426). Here, the Provider Agreement, which forms part of the contract which the plaintiff's claims are based, is both integral and explicitly relied upon in the Proposed Amended Complaint, and therefore, the court would have been permitted to consider it.

whatever it desires creates a situation where there is no mutuality of obligation and, therefore, no enforceable contract, (Doc. 31, Ex. 1, ¶¶ 143-52), and in response, the defendant argues that this claim is futile for failure to state a claim.

Quantum meruit "describes a cause of action seeking recovery for the reasonable value of services non-gratuitously rendered, but where no contract exists to dictate payment." Bernstein and Grazian, P.C. v. Grazian and Volpe, P.C., 931 N.E.2d 810, 826 (Ill. App. Ct. 2010). Illinois law requires that a plaintiff demonstrate the following to prevail on a theory of quantum meruit:

> (1) he performed a service to benefit the defendant, (2) he did not perform this service gratuitously, (3) the defendant accepted this service, and (4) no contract existed to prescribe payment for this service.

*Id.*; *see also* JMR Sales, Inc. v. MMC Elecs. Am., Inc., No. 02 C 1642, 2002 WL 31269612, at *1 (N.D. Ill. 2002) (quoting Owen Wagener & Co. v. U.S. Bank, 697 N.E.2d 902, 908 (Ill. App. Ct.1998)). Illinois law further provides that "a party cannot recover under quantum meruit when a contract governs the relationship between the parties." *JMR Sales, Inc.*, at *2. The plaintiff asserts that it has sufficiently alleged each of the four listed elements; however, the defendant argues that the fourth element cannot be satisfied because the facts alleged demonstrate the existence of an *enforceable contract* between the parties prescribing payment and each party's obligations. (Doc. 32, p. 11) (emphasis added).

Because both parties do not dispute the *existence* of a contract, the question then becomes whether the contract is indeed valid and *enforceable*. According to Illinois law, "[a] contract, to be valid, must contain offer, acceptance, and consideration; to be enforceable, the agreement must also be sufficiently definite so that its terms are reasonably certain and able to be determined." Halloran v. Dickerson, 287 Ill. App. 3d 857, 868-69 (Ill. App. Ct. 1997); *see also* Eagle Homes, LLC v. Town of Cortland, 2012 IL App (2d) 101184-U, ¶ 42, 2012 WL 6967054, at *10 (Ill. App. Ct. 2012). The plaintiff argues that the contract is unenforceable because it lacks mutuality of obligation and is not supported by consideration. (Doc. 33, p. 10); (Doc. 31, pp. 10-11). In the Proposed Amended Complaint, the plaintiff specifically claims that "the contract as construed by Catamaran does not impose any obligation on Catamaran to reimburse Plaintiff on its sale of prescription drug products," and therefore the contracted is not supported by consideration. (Doc. 30, Ex. 1, ¶ 147). The defendant argues that the parties' contract is supported by adequate consideration–namely, the defendant's promise to reimburse the plaintiff pursuant to specific terms in the contract in exchange for the plaintiff's sale of "prescription drug products to members of the defendant's insurance plan customers." (Doc. 32, p. 13).

Under Illinois law, "[c]onsideration is the bargained-for exchange of promises or performances, and may consist of a promise, an act or a forbearance. Any act or promise which is of benefit to one party or

disadvantage to the other is a sufficient consideration to support a contract." Carter v. SSC Odin Operating Co., LLC, 976 N.E.2d 344, 352 (Ill. 2012) (internal citations and quotations omitted); *see also* Lipkin v. Koren, 64 N.E.2d 890, 893 (Ill. 1946) ("It is a fundamental rule of law that a valuable consideration consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other."). "Consideration must be analyzed as of the time of entering the contract." Ogdon v. Hoyt, 409 F. Supp.2d 982, 988 (N.D. Ill. 2006).

The plaintiff's promise to sell prescription drug products to customers of members of the defendant's insurance plan undoubtedly confers a benefit onto the defendant and therefore satisfies the abovementioned definition of consideration. In exchange, the defendant has a contractual obligation to reimburse the plaintiff for these sales. (Doc. 31, Ex. 1, ¶¶ 126, 148). In fact, the Proposed Amended Complaint includes numerous factual allegations outlining the method and parameters of reimbursement to the plaintiff. (Doc. 31, Ex. 1, ¶¶ 31-32, 34, 38-39, 42-49, 91-93); (Doc. 1, Ex. A, p. 4-5). Thus, the promise to reimburse the plaintiff for drug sales, appears to provide a benefit to the plaintiff and serve as adequate consideration.

However, the plaintiff contends that the defendant's purported obligation to reimburse is "no more than an illusory promise," and therefore cannot be deemed valid consideration. (Doc. 33, p. 10). Specifically, the plaintiff argues

that the defendant's obligation to reimburse the plaintiff is not an obligation at all because the defendant can and does set reimbursement rates at whatever price it sees fit. According to Illinois law, "[a]n illusory promise . . . is one that, on closer examination, reveals that the promisor has not actually promised anything–performance is optional." Eagle Homes, LLC v. Town of Cortland, 2012 IL App (2d) 101184-U, ¶ 42, 2012 WL 6967054, at *10 (Ill. App. Ct. 2012) (citing Dwyer v. Graham, 457 N.E.2d 1239, 1241 (Ill. 1983); W.E. Erickson Construction, Inc., v. Chicago Title Insurance Co., 266 Ill. App. 3d 905 (Ill. App. Ct. 1994)). "One of the commonest kind of promises too indefinite for legal enforcement is where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice in effect destroys the promise and makes it merely illusory. . . . Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise." *Dwyer*, 457 N.E.2d at 1241 (citing Restatement (Second) of Contracts). And, "[a]n illusory promise is not sufficient consideration to support a contract. " Keefe v. Allied Home Mortg. Corp., 393 Ill. App. 3d 226, 229-230 (Ill. App. Ct. 2009) (internal quotation omitted).

In this case, the Proposed Amended Complaint and supporting exhibits demonstrate that the defendant has a contractual obligation to reimburse the plaintiff for its pharmaceutical sales. (Doc. 31, Ex. 1, ¶ 126) ("[E]ach Catamaran contract requires that Catamaran 'reimburse' Lakeview."). This

obligation is not optional. Nowhere in the Proposed Amended Complaint does the plaintiff provide facts demonstrating that the defendant has discretion on *whether or not to perform* its reimbursement obligations once the plaintiff has made a sale. *Id.* ¶ 147.[4] In this sense, the promise to reimburse the plaintiff for its sales is not illusory.

However, the plaintiff alleges that the defendant has *complete discretion* in determining what these reimbursement prices are, and as a result may set reimbursement rates below the plaintiff's drug acquisition costs, which, in turn, fails to "effectively" reimburse the plaintiff. (Doc. 31, Ex. 1, ¶¶ 126, 148). This allegation is cause for concern and requires a more thorough analysis. As stated, the Illinois Supreme Court in *Dwyer* held "where the promisor retains an *unlimited* right to decide later the *nature* or *extent* of his performance," his

---

[4] Paragraph 147 of the Proposed Amended Complaint includes the following statement:

> Although there is a written agreement that is supposed to govern the parties' dealings, the contract as construed by Catamaran does not impose any obligation on Catamaran to reimburse Plaintiff on its sale of prescription drug products. Specifically, Catamaran maintains t[sic] can set the MAC price at whatever it wants, for whatever reason it wants, and can change it whenever it wants without any advance notice to Lakeview whatsoever.

(Doc. 31, Ex. 1, ¶ 147). The plaintiff presents a conclusory allegation (see the first sentence in ¶ 147) that the contract does not require that the defendant reimburse the plaintiff; however, this is unsupported by factual allegations, and, as a conclusory statement, will not be considered in this court's analysis of whether Count IV (Quantum Meruit claim) states a plausible claim. In fact, numerous factual allegations contained in this complaint and its supporting exhibits directly contradict that assertion, as stated above.

promise is "merely illusory." *Dwyer*, 457 N.E.2d at 1241 (emphasis added). Here, the plaintiff has provided factual allegations to support the conclusion that, under the contract, the defendant has sole discretion to decide the price of reimbursements or the "nature" of its performance whenever it likes. (Doc. 31, Ex. 1, ¶¶ 91, 93, 118, 123). The plaintiff argues that this "unlimited" discretion supports a finding that consideration was illusory; however, the plaintiff alleges, as stated previously in this opinion, that the Provider Agreement specifically requires "[r]eimbursement will be *limited* by the pharmacies submitted ingredient cost plus dispensing fee." (Doc. 33, Ex. 1, ¶ 118) (emphasis added). Given this limitation, and the other provisions in the Provider Manual attached to the plaintiff's original complaint, which provide a framework for setting reimbursement prices, the court finds that the defendant's discretion is not unlimited in the manner contemplated in *Dwyer*.

However, in its Reply Brief, the plaintiff cites additional cases to support a finding that consideration is indeed illusory or insufficient under these circumstances. First, the plaintiff primarily relies on *Mimica v. Area Interstate Trucking*, a case decided by the Appellate Court of Illinois. In *Mimica,* the plaintiff assigned patent application rights to his employer in exchange for the ability to continue working for the employer as an at-will employee. Mimica v. Area Interstate Trucking, Inc., 620 N.E.2d 1328 (Ill. App. Ct. 1993). The employee's status was at-will prior to the assignment and at-will after the assignment; his status did not change, and in fact, his status as an employee

was in the hands of his boss, Mr. Dickson, at all times. Nothing changed due to his assignment, and he gained nothing from it. As a result, the court held that the employer's promise of continued employment amounted to no promise at all and was illusory. Thus, consideration was grossly inadequate and insufficient. While the plaintiff argues that the employer's complete control over the alleged consideration compelled the *Mimica* court's finding that the promise was illusory, in reading the opinion, this court finds that the element of control was not a dispositive factor. Instead, the absence of any new promise, obligation, or forfeiture on the part of the employer is the element that demanded the court find consideration lacking. Here, the parties do not have an existing relationship prior to entering into the contract, and unlike *Mimica*, the defendant does promise to provide the plaintiff with something new that the plaintiff did not receive prior to entering into an agreement with the defendant, *i.e.,* reimbursement for the plaintiff's sales. In conclusion, the court finds *Mimica* to be distinguishable from the instant case.

The plaintiff also cites to *Dohrmann v. Swaney*, another Illinois Appellate Court case. In *Dohrmann*, like *Mimica*, the court held "where the consideration . . . is illusory, the contract will be invalidated for gross inadequacy of consideration." Dohrmann v. Swaney, 14 N.E.3d 605, 615 (Ill. App. Ct. 2014) (citing *Mimica*, 620 N.E.2d 1328). Specifically, this case dealt with a contract in which "Mrs. Rogers agreed to transfer, upon her death, to Dohrmann over $5.5 million in assets in exchange for Dohrmann adding

Rogers as an additional middle name to his two sons' names." *Id.* at 613. Ultimately, the court held that Dohrmann's promise to add the Rogers as an additional name for his two sons was grossly inadequate because it did not achieve the objective of continuing the Rogers name and it was wholly unenforceable as both children were not parties to the contract and could change their names at any time. Further, there was no way to dictate how or require the children to use the Rogers name at all. Therefore, the court held that the consideration "seems to be so minimally beneficial to Mrs. Rogers (particularly in light of the goal stated in the Contract of 'continuing the Rogers name') as to be almost nonexistent, especially when contrasted with the $5.5 million Dr. Dohrmann is to receive under the terms of the Contract," and is therefore illusory. *Id.* at 615. The *Dohrmann* court found that consideration was lacking because the promise was not enforceable and therefore failed to amount to sufficient consideration. The facts are unique and distinct from the facts at issue in the case before this court today. Here, the defendant makes a promise to reimburse, and the defendant cannot renege on that promise without potentially breaching the contract. The plaintiff can enforce the defendant's compliance with the contract here in a way that would be impossible in *Dohrmann.* As such, the *Dohrmann* case is inapplicable to the facts in the present case.

Moreover, while *Dohrmann* does not apply to this case in the manner discussed above, it does provide valuable guidance relating to the parameters

through which a court may assess the adequacy of consideration supporting a contract. As a general rule, Illinois courts have long held that it is improper for courts to inquire into the adequacy of the consideration, because adequacy of consideration is within the exclusive control of parties that enter into a contract freely and without fraud. *Carter*, 976 N.E.2d at 352, ¶ 24; *see also* Dohrmann v. Swaney, 14 N.E.3d 605, 614 (Ill. App. Ct. 2014). In *Dohrmann*, however, the court identified an exception to the general rule: "where the consideration provided is so grossly inadequate as to shock the conscience, a court may examine the adequacy of the consideration." *Dohrmann*, 14 N.E.3d at 614. Thus, even if consideration is not deemed "illusory," it may be grossly inadequate and insufficient to support a contract. The relevant inquiry then becomes whether the defendant's promise to reimburse the plaintiff is so grossly inadequate as to "shock the conscience."

The plaintiff alleges numerous facts demonstrating that the defendant has unbridled discretion in setting reimbursement prices, such that the defendant can pay the plaintiff "whatever it wants, for whatever reason it wants, and can change it whenever it wants." (Doc. 31, Ex. 1, ¶ 147). However, this court does not find that the significant discretion explicitly provided to the defendant in the contract is so grossly inadequate as to "shock the conscience." While it may seem unreasonable that the defendant has such discretion, and as the plaintiff alleges, that the defendant is allegedly capable of reimbursing the plaintiff at rates below the plaintiff's drug

acquisition costs, "unreasonable" hardly rises to the level of "shocking the conscience." And, this court cannot pass judgment on whether either party entered into a bad bargain. Bonner v. Westbound Records, Inc., 394 N.E.2d 1303, 1308 (Ill. App. Ct. 1979) ("It is not the function of either the circuit court or this court to review the amount of the consideration which passed to decide whether either party made a bad bargain.").

Finally, the plaintiff analogizes the instant case to cases governing contracts with "open terms." *See* Doc. 33, p. 13. "Under Illinois law, a contract is enforceable even though some terms may be missing or left to be agreed upon by the parties." Hammer v. Residential Credit Solutions, Inc., 2015 WL 7776807, at *15 (N.D. Ill. 2015) (internal quotation omitted). "In order for such a contract to be enforceable, however, it is necessary that the terms to be agreed upon in the future can be determined 'independent of a party's mere 'wish, will, and desire' . . ., either by virtue of the agreement itself or by commercial practice or other usage or custom.' " Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 565 (7th Cir. 2012) (quoting United States v. Orr Construction Co., 560 F.2d 765, 769 (7th Cir. 1977)). The plaintiff seems to contend that the reimbursement price was left open, and therefore, in order for this contract to be valid and enforceable, the contract must provide that this "open term" will be determined independent of the defendant's mere desire. (Doc. 33, p. 13). Even if price of reimbursement is deemed an "open term," the Provider Manual explicitly provides a method for determining price:

> Claims . . . are reimbursed for prescription drugs at the lesser of the plan or network Average Wholesale Price (AWP) discount or other referenced based pricing; plus or minus a discount or maximum allowable cost (MAC) (when applicable for prescription drug products); the Provider's submitted gross amount due, the Provider's Usual and Customary price (U&C) that would be given under the same circumstances if the member did not possess prescription benefit coverage; or submitted ingredient cost, and the applicable plan or network dispensing fee including taxes if applicable.

(Doc. 1, Ex. 1, pp. 4-5); *see also* (Doc. 31, Ex. 1, ¶ 91). The contract further states that "Catamaran shall utilize client or plan parameters, Medi-Span or other national source, and internal processes as a reference but not as the sole determinant of price." (Doc. 1, Ex. 1, p. 5). These provisions demonstrate that the contract itself provides a method or standard through which price is determined, and this method requires considerations other than the defendant's mere wish or will. Thus, the contract satisfies the requirements for allowing open terms in a contract pursuant to Illinois law, and will not be deemed void or unenforceable on such grounds.

In sum, the plaintiff's Proposed Amended Complaint does not include factual allegations sufficient to state a quantum meruit claim because the facts do not demonstrate that the defendant's reimbursement obligation was illusory, insufficient, or an improper open term such that no enforceable contract exists. The plaintiff's motion to amend the complaint to include Count IV for quantum meruit is, therefore, denied for futility.

## IV. CONCLUSION

In light of the foregoing, the court will grant the plaintiff's motion for leave to amend, (Doc. 30), in part. The plaintiff's proposal to remove factual allegations relating to the other independent pharmacies that are no longer parties to the action is unopposed by the defendant and will be granted. The proposed amended claims under the UCC (Count I) will not be allowed to proceed against the defendant on the basis of futility. The plaintiff's proposal to include claims for breach of contract (Counts II) for the defendant's failure to "use 'client or plan parameters, MediSpan or other national source, and internal processes as a reference,' " (Doc. 31, Ex. 1, ¶ 119), decision to set reimbursement prices below acquisition costs, and use of multiple MAC prices will be granted, and these claims will be allowed to proceed. However, the plaintiff's proposal to include a breach of contract claim for the defendant's failure to "implement '[o]ther nationally recognized reference based sources' despite market conditions warranting as much," (Doc. 33, Ex. 1, ¶ 119), will be denied. Finally, the plaintiff's quantum meruit claim (Count IV) will not be allowed to proceed as it is futile. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: June 13, 2016**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0290-02.wpd