**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

LAKEVIEW PHARMACY OF     :
RACINE, INC.,

                             :

        **Plaintiff,**              **CIVIL ACTION NO. 3:15-290**

                             :

        **v.**

                             :      **(JUDGE MANNION)**

**CATAMARAN CORPORATION,**

                             :

        **Defendant**

## <u>MEMORANDUM</u>

Pending before the court is defendant Catamaran Corporation's ("Catamaran") motion to quash subpoenas served by plaintiff Lakeview Pharmacy of Racine, Inc. ("Lakeview") on Catamaran clients Exelon Corporation ("Exelon"), Target Corporation ("Target"), CIGNA and South Carolina PEBA ("PEBA") (collectively, "Customers"). (Doc. 38). The defendant, acting on the third parties' behalf, contends the discovery requests are irrelevant and disproportionate in scope to the underlying claims. Based upon the court's review of the motion and related materials, the motion to quash will be **GRANTED**.

## I. FACTUAL BACKGROUND

The defendant is a large pharmaceutical benefits manager, ("PBM"), (Doc. 11, p.3), that "contracts with insurance companies, self-insured employers, and government entities to administer their prescription-drug benefit programs." (Doc. 1, ¶45). PBMs operate networks of retail

pharmacies, whose customers are members of particular insurance plans for drug coverage ("plan members"). *Id.* at ¶¶46-47. The defendant acts as the broker between the plan sponsors, plan members, and retail pharmacies, one of which is the plaintiff. *Id.* at ¶49.

The relationship between the defendant and the plaintiff is contractual in nature. *Id.* at ¶¶53-54. However, the contract governing the plaintiff and defendant's relationship was not negotiated by the parties themselves. Rather, the defendant negotiated the contract through a pharmacy services administration organization ("PSAO"). *Id.* at ¶¶53-54, 109. In general, the defendant negotiates contracts with independent pharmacies through PSAOs in bulk. *Id.*

The defendant has confidentiality agreements with PSAOs to ensure that "critical aspects of the contracts" remain hidden from the plaintiff and other independent pharmacies in its network. *Id.* at ¶¶58-59. In fact, pharmacies, including the plaintiff, do not receive the contract itself ("Provider Agreement"), and instead only receive summary documents, which provide select principal terms of the contract, as well as the Provider Manual. *Id.* at ¶¶110-113. The Provider Manual, which was developed and can be amended by the defendant at any time, is binding upon the parties. Should a contradiction arise between the Provider Agreement and the Provider Manual, the Manual controls. *Id.* at ¶¶113, 116.

When a plan member purchases prescription medication at a retail

pharmacy within the defendant's PBM network, the pharmacy inputs the plan member's information into the PBM's electronic system, which then determines the payment amounts owed by both the plan sponsor and the plan member (co-pay). *Id.* at ¶47. The pharmacy bills the co-pay to the plan member, and subsequently learns for the first time the amount of money that it will be reimbursed by the PBM. *Id.* at ¶63. This process is called "claim adjudication." *Id.* at ¶64. Should the reimbursement rates for particular prescription medications change, the plaintiff does not learn of these changes until claim adjudication as the defendant provides no advance notice. *Id.* at ¶65.

Reimbursement occurs twice a month, and it includes charges for claim processing. *Id.* at ¶¶67-68. The defendant also charges fees for claim denials, claim reversals (even if due to the defendant's own errors), and transaction fees for adjudication reversal and payment claw-back. *Id.* at ¶68. The amount that the defendant reimburses independent pharmacies such as the plaintiff depends upon its own determination of reimbursement rates. For multi-source generic drugs (non-brand name), the defendant reimburses pharmacies based upon the maximum allowable cost ("MAC"), partially derived from the annual wholesale price ("AWP").[1] *Id.* at ¶73.

The MAC calculations and reimbursement rates are also modified to

---

[1]With regard to brand name drugs, the defendant reimburses pharmacies at a percentage of the AWP plus a dispensing fee. *Id.* ¶71

comply with the defendant's obligation to plan sponsors to provide a particular Generic Effective Rate ("GER"), discounted off of the AWP. *Id.* at ¶76. The defendant allegedly "minimizes and eliminates margins that pharmacies can make on generics through manipulation of its MAC prices," which impacts the financial health of pharmacies in the PBM's network. *Id.* at ¶¶80-81. The defendant allegedly determines MAC prices that create low reimbursements for pharmacies, and then charges the plan sponsors high amounts, so that it creates a greater margin by which the defendant can generate profit (i.e., price spreading). *Id.* at ¶¶84-85. Furthermore, the defendant allegedly sets reimbursement amounts that are less than the cost of the drug itself, thus the reimbursements fail to produce margins that would allow pharmacies to remain economically viable. *Id.* at ¶¶87-90.

Should a pharmacy wish to challenge the defendant's MAC rate, it must pursue a "MAC pricing appeal." *Id.* at ¶119; (Doc. 1, Ex. A, p. 20). All appeals must be directed at the defendant, and most are submitted by PSAOs on behalf of individual pharmacies like the plaintiff. (Doc. 1, ¶¶119, 121). Information regarding MAC appeals is stored in Catamaran's MAC appeal database, which was first used "sometime in 2014," requires, among other things, the purchase price of the drug. (Doc. 79, Ex. 4, p. 98:11-14). Prior to 2014, Catamaran's database contained the pharmacy's invoice cost; the "Health Care Financing Administration price point;" and the "Anda ACQ" price point, which was the price point from the website for the wholesaler Anda

used to validate MAC pricing. *Id.* at 108:17-19. Allegedly, the defendant frequently fails to respond to appeals promptly, sometimes fails to respond at all, and never retroactively reimburses pharmacies that are successful in their appeals. *Id.* ¶122.

## II.    PROCEDURAL BACKGROUND

The plaintiff originally brought this action along with twenty-eight (28) other independently-owned community pharmacies against Catamaran for: (Count I) breach of contract under the Uniform Commercial Code ("UCC"); (Count II) breach of common law contract for acting in bad faith in setting prices for prescription drugs; (Count III) breach of common law contract for bad faith responses to successful MAC (maximum allowable cost)  pricing appeals; (Count IV) and bad faith in failing to update MAC prices. (Doc. 1). The plaintiffs attached to the complaint a copy of the Provider Manual, (Doc. 1, Ex. 1), which, as previously stated, forms the contract between the parties along with the Provider Agreement. In the original complaint, the plaintiffs sought damages based on breach of contract and specific performance such that Catamaran would "set in good faith reimbursement rates for generic drugs and make adjustments to MAC prices at a commercially reasonable speed." (Doc. 1, p. 37).

On April 20, 2015, the defendant filed a motion to dismiss non-arbitrable claims and to compel arbitration. (Doc. 11). Lakeview filed a brief in opposition

on May 4, 2015, (Doc. 13), to which the defendant replied on May 18, 2015. (Doc. 15). On July 16, 2015, this court partially resolved the defendant's motion by granting the motion to compel arbitration with respect to all parties except for Lakeview, whose contract does not contain an arbitration clause. (Doc. 20). On December 9, 2015, the court partially denied the defendant's motion to dismiss, leaving Count III as the sole remaining claim. (Doc. 29). Count III sought "to recover on a retroactive basis the difference between the reimbursement rates established by their successful MAC pricing appeals and the amounts they were being reimbursed for those particular drug claims prior to the successful MAC appeals." (Doc. 1, p. 33).

On December 23, 2015, the plaintiff filed a motion to amend the complaint, (Doc. 30), and a supporting brief, (Doc. 31). The proposed amended complaint removes all facts and allegations related to the pharmacies no longer parties to this action. It also includes: Count I, which "re-pleads [the plaintiff's] UCC count to bring it in line with this Court's assessment of the Illinois UCC and *3Com Corp. v. Electronic Recovery Specialists, Inc.;*" Count II, in which the plaintiff asserts three theories of liability based on the breaches of express contract terms; Count III, which remains the same; and Count IV, in which the plaintiff asserts a claim for quantum meruit. (Doc. 31, pp. 3-4). Finally, the Proposed Amended Complaint removes claims regarding violations of implied covenants governing MAC pricing (Counts II and IV from the original complaint), as this court dismissed

them previously. *Id.* at 4.

On January 11, 2016, the defendant filed a brief in opposition, arguing proposed Count I fails to cure the defects of the original UCC claims, and Counts II and IV are futile as they fail to state a claim upon which relief can be granted. (Doc. 32, p. 2). The plaintiff filed a reply on January 25, 2016. (Doc. 33). On June 13, 2016, the court granted in part and denied in part the plaintiff's motion for leave to amend. (Doc. 42). Specifically, the court granted the plaintiff's requests "to remove factual allegations relating to the other independent pharmacies that are no longer parties to the action" and "to add Count II for breach of contract . . . insofar as it claims that the defendant's failure to 'use "client or plan parameters, MediSpan or other nation source, and internal processes as a reference[.]"'" (Doc. 42). The court denied the plaintiff's requests to add "Count I, a UCC claim," "a claim for breach of contract, under Count II, for the defendant's failure to 'implement "[o]ther nationally[-]recognized reference[-]based sources" despite market conditions warranting as much[;]'" and "Count IV on a theory of quantum meruit[.]" (Doc. 42).

The plaintiff amended its complaint on June 16, 2016, (Doc. 47), and again on June 30, 2016,[2] (Doc. 53), reflecting the court's order of June 13,

---

[2] This unopposed second amended complaint merely corrected a "technical glitch" that resulted in an incomplete sentence in Paragraph 54, and added Paragraph 116, which alleges "that Catamaran routinely ignores pharmac[ie]s['] acquisition costs in deciding MAC appeals brought by

2016. The second amended complaint asserts two claims for relief: (Count I) breach of contract for failure to use "client or plan parameters" in setting reimbursement rates, (Doc. 53, pp. 19-21); and (Count II) breach of contract for bad faith response to successful MAC pricing appeals, (Doc. 53, pp. 21-24).

On March 28, 2016, the plaintiff sent subpoenas *duces tecum* to Exelon, Target, Cigna and PEBA – all non-party customers of Catamaran. (Doc. 39, pp. 3-4). The subpoenas request:

I.     all contracts with Catamaran in effect between 2012 and present;

ii.    all documents relating to amounts paid to Catamaran for all generic drug prescriptions filled between 7/1/2012 and present by Lakeview Pharmacy;

iii.   all documents relating to amounts paid to Catamaran for all generic drug prescriptions filled between 7/1/2012 and present by Lakeview LTC Pharmacy;

iv.    all documents relating to amounts paid to Catamaran for the generic prescriptions shown on the attached chart.

Lakeview subsequently withdrew part iv of the subpoenas. (Doc. 56, p. 4).

On May 24, 2016, the defendant filed a motion to quash these subpoenas, (Doc. 38), along with a supporting memorandum, (Doc. 39), arguing: (1) the "request[ed] documents and information are irrelevant to the . . . remaining count[s] in the complaint;" (2) "they seek disclosure of protected commercial information;" and (3) "they serve no purpose other than to harass

pharmacies who were reimbursed below their acquisition cost." (Doc. 49).

the non-party customers." (Doc. 39).[3] However, before filing its opposition brief, the plaintiff filed its first amended complaint on June 16, 2016. (Doc. 47).

On June 24, 2016, the plaintiff filed an opposition to the motion to quash arguing: (1) the motion to quash should fail because there are new claims in the amended complaint; (2) the documents sought are relevant to the claims in the amended complaint; (3) the requested documents can be kept confidential through the existing protective order; (4) the subpoenas are not harassing or burdensome. (Doc. 50). The plaintiff then filed a second amended complaint on June 30, 2016. (Doc. 53).

On July 1, 2016, the defendant filed a reply, arguing: (1) the requested "commercially sensitive material" is still irrelevant despite the new claims from the amended complaint; (2) according to the Provider Agreement, contractually-imposed limitations period precludes action based on claims paid before February 9, 2014; and (3) the plaintiff fails to offer a "principled reason" for production of the requested documents, and therefore the requests are harassing and burdensome. (Doc. 54). Also pending before the court is a motion to strike filed by Lakeview on July 26, 2016. (Doc. 58).

On January 26, 2017, this court held a telephonic status conference with both parties. The court issued a subsequent order directing counsel to

---

[3]This motion was filed before the court's order partially granting leave to file an amended complaint.

"submit to the court briefs regarding the proportionality of discovery as discussed in Federal Rule of Civil Procedure 26(b)(1)." (Doc. 73). Having received and reviewed briefs from both parties, the motion to quash is now ripe for review.

## III.   STANDARDS OF LAW

Federal Rule 26(b)(1) states: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." "A party seeking discovery bears the initial burden of demonstrating the requested discovery is relevant to its claim or defense." CedarCrestone, Inc. v. Affiliated Computer Services LLC, No. 1:14-MC-0298, 2014 WL 3055355, at *4 (M.D.Pa. 2014) (citing Morrison v. Phila. Hous. Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in

favor of broad disclosure." McConnell v. Canadian Pac. Realty Co., 280 F.R.D. 188, 193 (M.D.Pa. 2011) (citing In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009)). Thus, the court must address both relevancy and proportionality.

As to relevancy, "[a]lthough irrelevance is not among the litany of enumerated reasons for quashing a subpoena found in Rule 45, courts have incorporated relevance as a factor when determining motions to quash a subpoena." Moon v. SCP Pool Corp., 232 F.R.D. 633, 637 (C.D.Cal. 2005). Evaluation of relevancy follows from the rule that a subpoena may only seek information that is discoverable, i.e., information that is not privileged and relevant to the claim or defense of any party, Fed. R. Civ. P. 26(b)(1), "or if the court has broadened the scope of discovery, relevant to the subject matter involved in the action," Prac. Guide Fed. Civ. Proc. Before Trial (5th Cir.) Ch. 11(IV)-F (quotation omitted). The Third Circuit has upheld district court orders quashing subpoenas due to the responding party's failure to demonstrate the relevance of the desired information. See Smith v. BIC Corp., 869 F.2d 194, 202 (3d Cir. 1989); Ekhato v. Rite Aid Corp., 529 F. App'x 152, 154, n.3 (3d Cir. 2013) (non-precedential opinion). Therefore, relevancy of the information demanded is a significant factor in determining whether to quash a subpoena.

"This concept of relevance is tempered, however, by principles of proportionality." Cope v. Brosius, No. 4:12-CV-2382, 2016 WL 5871157, at *2 (M.D.Pa. Oct. 7, 2016). Discovery requests shall be "neither unreasonable not

unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B)(iii). Federal Rule of Civil Procedure 26(g)(1)(B)(ii) states discovery may not be sought "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation[.]"

Fed. R. Civ. P. 45 authorizes parties to serve subpoenas on parties or non-parties commanding the production of books, documents, electronically stored information, or tangible items. Fed.R.Civ.P. 45(d)(3) mandates that a court quash or modify a subpoena, "upon timely motion," for 1) failing to provide a reasonable time to comply; 2) requiring a person to comply beyond the geographical limits as stated in the Rules; 3) requiring "disclosure of privileged or other protected matter"; or 4) subjecting a person to an "undue burden."

Federal Rule of Civil Procedure 45(d)(3)(B)(I) states "[t]o protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires . . . disclosing a trade secret or other confidential research, development, or commercial information[.]" However, "[t]here is no absolute privilege for trade secrets and similar confidential information." Centurion Indus. v. Warren Steurer & Assocs., 665 F.2d 323, 325 (10th Cir. 1981) (citing Fed. Open Market Comm. v. Merrill, 443 U.S. 340, 362 (1979)). "A party

resisting discovery of trade secrets must demonstrate that the disclosure of the information will be harmful." Once demonstrated, the party seeking disclosure assumes the burden to show "the requested information is relevant and necessary to the action." "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. *Id.* at 325-26.

## IV. DISCUSSION

As an initial matter, Catamaran contends it has standing to challenge the nonparty subpoenas at issue here. (Doc. 39, p.6). Lakeview does not oppose Catamaran's contention. Generally, "'a party does not have standing to quash a subpoena served on a third party.'" Kida v. Ecowater Sys. LLC, No. 10-4319, 2011 WL 1883194, at *2 (E.D.Pa. May 17, 2011) (quoting Thomas v. Marina Assocs., 202 F.R.D. 433, 434–35 (E.D.Pa. 2001)). However, a party may move to quash when it "claims 'some personal right or privilege in respect to the subject matter of a subpoena duces tecum directed to a nonparty.'" Davis v. Gen. Accident Ins. Co. of Am., No. Civ. A. 98–4736, 1999 WL 228944, at *2 (E.D.Pa. Apr.15, 1999) (Hutton, J.) (quoting Dart Indus., Inc. v. Liquid Nitrogen Proc. Corp. of Cal., 50 F.R.D. 286, 291 (D.Del.1970)). Because the subpoenas request confidential and proprietary information regarding Catamaran's business operations, and because Catamaran has an interest in maintaining the confidentiality of that

13

information, the court finds that Catamaran has standing to challenge the non-party subpoenas.

**A.    Relevancy**

**1. Lakeview's Initial Burden**

In determining whether to restrict the scope of discovery, a court must first determine whether the requested discovery is relevant. Lakeview, as the party requesting discovery, bears the initial burden of proving relevancy. Lakeview advances two substantive arguments regarding the relevancy of the requested documents to the claims in the second amended complaint.[4] First, Lakeview argues the court cannot decide if Catamaran considered "client or plan parameters" in setting MAC prices if it does not know what said parameters are. (Doc. 56, p. 5). Second, as a corollary, the court cannot determine what the parameters are "if it does not know the agreements between Catamaran and its clients, and the amount its clients pay Catamaran for these prescriptions Lakeview fills for those clients insureds[.]" *Id*.

Lakeview also argues it has confirmed the relevancy of the documents being sought through the discovery process.[5] (Doc. 56, p. 5). That is,

---

[4](Count I): breach of contract for, inter alia, failure to use "client or plan parameters" in setting reimbursement rates; and (Count II) breach of contract for bad faith response to successful MAC pricing appeals.

[5] Lakeview cites generally to the deposition of "one corporate designee from Catamaran" and "selected documents relating to about 100 MAC appeals submitted by Lakeview to Catamaran." (Doc. 56, p. 5).

Lakeview claims Catamaran reimbursed less than the acquisition cost of the drugs in "virtually all" of the MAC appeals, while also rejecting "90%" of these appeals. (Doc. 56, p. 5) (citing "Spreadsheet of MAC appeals produced by Catamaran," Ex. A). Each of these appeals arose from a plan in which Catamaran was the PBM for Cigna, one of the subpoenaed non-parties. (Doc. 56, p. 6). The MAC list governs both Catamaran's payments to Lakeview and Cigna's payments to Catamaran. *Id.* Accordingly, Lakeview argues Cigna's payments to Catamaran are directly relevant to show "plan parameters" and the extent to which Catamaran allegedly acted in bad faith. *Id.*

Regarding the instant contract provision, providing "Catamaran shall utilize client or plan parameters, MediSpan or other national source, and internal processes as a reference but not as the sole determinant of price," (Doc. 31, Ex. 1, ¶118) (quoting Doc. 1, Ex. 1, p. 6), this court has already found:

> [T]he contract provision quoted by the plaintiff is unambiguous and plainly states that the defendant is required to "utilize" the three categories of listed sources when determining reimbursement prices. The provision states that while the defendant is obligated to use the listed sources as references, these sources are not the "sole determinants" of price. This plainly means that the defendant may use other resources when determining reimbursement rates *in addition to* the required sources listed, but it does not mean the defendant may disregard or fail to take into account the three listed sources[.] (Doc. 41, p. 12) (emphasis in original).

Catamaran does not dispute this finding, and even acknowledges that the requested contracts may contain "client and plan parameters." (Doc. 54, p.8).

15

Rather, Catamaran focuses on limiting the scope of discovery, which the court will address in the next section. The court agrees that in light of the fact the court has already found that the contract requires Catamaran to consider the "plan parameters," it is essential to determine what said parameters are.

The court finds that any payments made by the third parties to Catamaran are relevant to Lakeview's claims because both Cigna's payments to Catamaran and Catamaran's payments to Lakeview should have been calculated using the same "plan parameters." With respect to Cigna specifically, the court agrees with Lakeview that " . . . to the extent that Catamaran paid Lakeview a MAC price below its acquisition cost, but Cigna paid Catamaran a far greater MAC price for the same prescription, it would also be relevant to show that Catamaran acted in bad faith when it refused to adjust the MAC price in response to Lakeview's MAC appeal." (Doc. 56, p. 6). Thus, the court finds Lakeview has met its initial burden to show that the subpoenas are relevant to its claim.

## 2. Catamaran's Burden and Proportionality

As Lakeview has satisfied its burden to show initial relevancy of the requested discovery, the burden then shifts to Catamaran to show the requested discovery is either overly broad or is of such marginal relevance that the potential harm caused by disclosure would outweigh the presumption of broad disclosure.

Catamaran claims the requested disclosure of the terms of the

Customer contracts and the amount received in payment from the Customers, are disproportional to the instant claims. (Doc. 39, p. 9). That is, MAC appeal procedures, resulting price increases, and effective dates are not affected by unrelated customer contracts because they have no bearing on Catamaran's handling of Lakeview's claims. *Id.* at 8. Specifically, request numbers ii and iii are overly broad in they seek amounts paid for *all* generic prescriptions over a period of four (4) years, as well as amounts paid for prescriptions that are not the subject of appeal by Lakeview. *Id.* at 9.[6]

As stated above, the 26(b)(1) factors regarding proportionality are: (1) the importance of the issues at stake; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

As to the first and fifth factors, the court cannot find that the information is important to the issues at stake. It is not disputed that both Catamaran and the third parties possess the information requested. Indeed, Catamaran even states the requested information is "integral to Catamaran's business and can be easily located and produced if the court so orders." (Doc. 54, p. 11).

---

[6] Catamaran also contends number iv relates to prescriptions filled by pharmacies who are not parties to this litigation, and thus is entirely unrelated to the instant litigation. (Doc. 39, p. 9). The court does not address this argument because, as previously stated, Lakeview voluntarily withdrew this section of the subpoenas.

Lakeview has failed to provide a reason this information must be obtained through third parties, as opposed to Catamaran directly. Similarly, the sixth factor, dealing specifically with the proportionality of discovery requests, is of particular concern to the court. Lakeview has already subpoenaed multiple third parties, and received extensive pricing data. More importantly, the subpoenaed Customer Contracts contain confidential information wholly unrelated to the underlying claims. Therefore, these three factors militate against Lakeview and in favor of granting the motion to quash.

Factors two, three, and four are unhelpful in the instant case. First, as pointed out by Catamaran, Lakeview's CEO and President testified that he "does not even know whether Lakeview has sustained a dollar of loss as a result of Catamaran's setting prices below Lakeview's acquisition costs." (Doc. 80, Ex. C, 129:3-131:18). Thus, the court is unable to place any weight on this factor. Second, the court cannot place weight on the parties' relative access to the relevant information because this motion specifically addresses documents in the third parties' possession. Although Catamaran may have the same information, the court must confine its analysis to the third party information addressed in the motion to quash. Third, although Lakeview is an independently-owned pharmacy and Catamaran is a large PBM, neither party has specifically addressed the issue of the parties' relative resources.

Given the extensive discovery already conducted by Lakeview and availability of the requested information from Catamaran, the court finds the

requested discovery to be disproportional to the needs of this case.

## C. Disclosure and Confidentiality

Catamaran first contends the subpoenas should be quashed because the Customer Contracts contain protected data that would be disclosed to a competitor beyond merely the "client or plan parameters" used as a reference to establish MAC prices. (Doc. 54, p. 5). As the party resisting discovery, Catamaran bears the burden of demonstrating that disclosure would be harmful. Specifically, Catamaran claims the Customer Contracts contain "extensive financial data, business processes and methods, as well as Catamaran's marketing and other business strategies, as well as performance goals." (*Id.* (citing Decl. Of Matthew Vesledahl, Dkt. No. 39, ¶4, attached to Catamaran Memorandum in support of its Motion to Quash as Exhibit D)). Disclosure of such "commercially sensitive and confidential information" could damage Catamaran's business. (Doc. 54, p. 5). That is, this information would allow Lakeview "to determine Catamaran's marketing goals and business strategies, including pricing formulas and profit margins, for example, would obviously benefit Lakeview in future negotiations with Catamaran and other PBMs. *Id.*

Catamaran claims Lakeview would obtain an unfair competitive advantage not only in the instant litigation, but also in "other litigation or contracting." (Doc. 54, p. 7). Catamaran claims Lakeview's counsel represents other former plaintiffs from this initial action and disclosure of the

Customer Contracts would "inevitably inform Counsel's strategy, claims assessment and discovery requests" despite the fact that the Protective Order precludes Counsel's use of the confidential information outside this action. *Id*. That is, the mere presence of a Protective Order does not justify the disclosure of commercially-sensitive material to a competitor. (Doc. 54, p.6). Catamaran cites [Micro Motion, Inc. v. Kane Steel Co., 894 F.2d 1318, 1325 (Fed. Cir. 1990)](#) for the proposition that it would be "divorced from reality to believe that either party here would serve as the champion of its competitor . . . either to maintain the confidentiality designation or to limit public disclosure as much as possible." (Doc. 54, p. 7).

Lakeview neither disputes the confidential nature of some of the requested information nor will object to the designation of such information as confidential. (Doc. 56, p. 7). However, Lakeview argues any such confidential information falls under the court's November 24, 2015 Stipulated Protective Order. (Doc. 27, ¶1). Specifically, Lakeview points out that the Stipulated Protective Order clearly applies to "responses to subpoenas," *Id.*,[7] and allows a subpoenaed non-party to "designate documents as confidential and 'rely on

---

[7] "Scope. All materials produced or adduced in the course of discovery, including but not limited to, initial disclosures, responses to discovery requests, responses to subpoenas, deposition testimony and exhibits (hereinafter collectively "documents"), shall be subject to this Order concerning Confidential Information as defined below. This Order is subject to the Local Rules of the District and the Federal Rules of Civil Procedure on matters of procedure and calculation of time periods."

the terms of the Order as if they were a party,'" *(Id.* at ¶14).[8] (Doc. 56, p. 7).

Additionally, Lakeview distinguishes the type of business relationship it has with Catamaran from that of Catamaran and the four (4) subpoenaed non-parties:

> Although paragraph 46, 95-98 of Lakeview's complaint discusses competition between Lakeview and Catamaran, that competition is between Catamaran's *mail order pharmacy* and Lakeview's retail pharmacy for Lakeview's *retail* customers. The "Customers" at issue here are Catamaran's *PBM customers*, i.e. Cigna, Target, Exelon, and South Carolina PEBA. Lakeview does not, will not and cannot compete with Catamaran for the PBM business of these insurance and self insured plans. (Doc. 56, p. 8) (emphasis in original).

Essentially, Lakeview argues that it is impossible to obtain a competitive advantage because the parties are not in competition with each other.

While Lakeview is correct to distinguish between the customers at issue here (PBM customers like the subpoenaed third parties) and Lakeview's retail customers, it is incorrect to then conclude that no competitive advantage could exist between the two parties. In fact, Lakeview explicitly acknowledges

---

[8] "Subpoenas Served on Third Parties. If a party to this action serves a non-party with a subpoena for documents or deposition testimony pursuant to this litigation, that party shall provide the non-party with a copy of this Order. If the non-party executes Attachment A to this Order and thereby agrees to be bound by its terms, the non-party may then designate documents and deposition testimony as Confidential Information pursuant to the terms of this Order and rely on the terms of this Order as if they were a party. No third party may receive or view information designated as 'CONFIDENTIAL' pursuant to this Order unless the third party has executed Attachment A to this Order, and thereby agreed to be bound by its terms."

that "[s]ome PBMs, like Catamaran (*e.g.*, through FutureScripts), also operated their own mail-order pharmacies that inevitably compete with retail pharmacies like [Lakeview]." (Doc. 1, ¶46; Doc. 47, ¶17). It is disingenuous then for Lakeview to subsequently argue they are not in competition with Catamaran, simply because the targets of the subpoena are PBM customers. Further, courts have routinely recognized that "disclosure to a competitor is more harmful that to a noncompetitor." American Standard, Inc. v. Pfizer, Inc., 828 F.2d 734, 741 (Fed. Cir. 1987) (citing Coca-Cola Bottling Co. v. Coca-Cola Co., 107 F.R.D. 288, 293 (D.Del. 1985). It is undisputed that the requested discovery from third party customers would contain extensive data beyond the scope of the "client and plan parameters" at issue here. To allow Lakeview to acquire such customer contracts would potentially allow Lakeview access to Catamaran's business strategy, marketing goals, profit margins, pricing goals, etc.

The mere presence of a protective order does not by itself require disclosure of any kind. Courts have routinely found that a protective order is insufficient protection against unnecessary disclosure of confidential information to the requesting party. ("[I]t would be divorced from reality to believe that either party here would serve as the champion of its competitor . . . to maintain the confidentiality designation or to limit public disclosure . . . during trial." (quoting Micro Motion, Inc. v. Kane Steel Co., Inc., 894 F.2d 1318, 1325 (Fed. Cir. 1990))). Considering Lakeview's admission that it is

Catamaran's competitor, as well as counsel's involvement in other related litigation with Catamaran (discussed in the next section), the court finds the Protective Order is insufficient to protect against the competitive advantage that would be afforded to Lakeview's counsel if the court were to allow the subpoenas.

## D. Are the subpoenas harassing or overly burdensome?

Catamaran argues Lakeview's subpoenas seek documents for the improper purpose of harassment of non-party customers. (Doc. 39, p. 13; Doc. 54, p. 10). Catamaran claims that Lakeview can obtain most, if not all, of the requested materials from Catamaran, thus making it unnecessary to contact the Catamaran's customers at all. *Id.* Catamaran also generally contends Lakeview is seeking to gather information for use in proceedings other than the instant matter. *Id*.

Lakeview contends Catamaran fails to meet its burden showing the subpoenas are harassing. (Doc. 56, p. 9). Specifically, Lakeview contends Catamaran fails to provide "'specific examples or articulated reasoning' demonstrating it needs to be protected from these subpoenas." (Doc. 56, p.9) (citing Cipollone v. Liggett Group, Inc., 785F.2d 1108, 1121 (3d. Cir. 1986)). Both parties agree that Rule 45 allows a party to subpoena a third party for relevant documents; they simply disagree about whether the subpoenas in the instant case are overly harassing or burdensome.

Unfortunately, Lakeview has failed to demonstrate why the documents

must be obtained from third parties as opposed to Catamaran directly. Catamaran rightly points out that these documents are "entirely objective" and not "otherwise based on the credibility of the person or entity producing the materials." (Doc. 54, p. 10). Further, Catamaran explains that "[t]he Customer Contracts are integral to Catamaran's business and can be easily located and produced if the Court so orders." *Id.* at 11. The court agrees further with Cigna's objection: ". . . since Catamaran is a party to the lawsuit, you can obtain the requested information from Catamaran through the normal course of discovery." (Doc. 54, Ex. D).

Not only are the requests for production burdensome in themselves, but also they raise the issue of whether Lakeview's would be afforded an undue advantage in related litigation were the court to enforce the subpoena requests. As Catamaran points out, Lakeview's counsel represents pharmacies other than Lakeview in pending arbitration proceedings, several of which were parties to the original action. Despite the protective order precluding the use of confidential information outside of this litigation, overly broad discovery may unfairly influence Lakeview's litigation strategy in these outside proceedings.

For these reasons, the court finds the requested information to be both disproportionate and unduly burdensome.

## V.    CONCLUSION

In light of the foregoing, the court will **GRANT** the plaintiff's motion to quash. (Doc. 38). An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**Dated: September 28, 2017**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0290-03.wpd