## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

LAKEVIEW PHARMACY OF RACINE, INC.,

Plaintiff,

v.

CATAMARAN CORPORATION,

Defendant.

CIVIL ACTION NO. 3:15-CV-00290

(MEHALCHICK, J.)

## MEMORANDUM

Before the Court are cross motions for summary judgment filed by Plaintiff Lakeview Pharmacy of Racine Inc. ("Lakeview") (Doc. 149) and Defendant Catamaran Corporation ("Catamaran") (Doc. 134). Also before the Court is a motion to intervene filed by Platt LLC, Hudson Pharmacy Groupe 1 Inc., and Wolfe's Pharmacy Inc. (collectively, "the Intervenors"). (Doc. 178). For the following reasons, Catamaran's motion for summary judgment will be **GRANTED**. (Doc. 134). Lakeview's motion for summary judgment will be **DENIED**. (Doc. 149). The Intervenors' motion to intervene will be **DENIED** as **MOOT**. (Doc. 178).

## I. BACKGROUND AND PROCEDURAL HISTORY

The following factual background is taken from the docket, the parties' statements of material facts and answers thereto.[1] Because the Court writes primarily for the parties, and the extensive factual and procedural history of this case has been documented in numerous

---

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. In addition, the facts have been taken in the light most favorable to the non-moving party with respect to each motion.

other filings, the Court provides an abbreviate version here. At issue in this case are breach-of-contract and breach of implied duties claims brought almost 10 years ago by a Wisconsin-based pharmacy, Lakeview, against its pharmacy benefits manager, Catamaran. (Doc. 1). As explained by Catamaran, "Lakeview contends it was under-reimbursed by Catamaran for some of the prescription drugs Lakeview sold to members of health plans for which Catamaran served as the pharmacy benefits manager ("PBM")." (Doc. 140, at 6). It is this under-reimbursement that forms the basis of Lakeview's breach of contract and breach of implied duties claims.

Relevant here is the discovery timeline in this case, which predates the undersigned's assignment to this matter. The original Joint Case Management Plan, signed by the parties and adopted by the Court, indicates that fact discovery was to be completed by September 30, 2016. (Doc. 35; Doc. 68; Doc. 141, ¶ 49). Lakeview's deadline to serve expert reports was set for October 31, 2016. (Doc. 35; Doc. 68; Doc. 141, ¶ 49). As discovery ensued, the parties sought the Court's intervention in numerous discovery disputes, some of which took years to resolve. (Doc. 94; Doc. 95; Doc. 96; Doc. 103). Despite the parties' requests, the Court refused to extend the discovery deadlines. (Doc. 100). Nevertheless, Lakeview served its expert report on February 16, 2021, more than four years after the October 2016 deadline. (Doc. 141, ¶ 51). Catamaran contends this expert report was not properly served in this case, but rather was served in a related case, *Mabe v. Optum Rx*, Civil Action No 3:17-1102. (Doc. 157, at 6).

On February 12, 2024, the undersigned was assigned to this case. (Doc. 120). On May 31, 2024, Catamaran filed a motion for summary judgment. (Doc. 134). On July 8, 2024, Lakeview filed a cross motion for partial summary judgment. (Doc. 149). On November 15,

2024, the Intervenors filed their motion to intervene.[2] (Doc. 178). Once all the pending motions were ripe, on February 19, 2025, the Court held oral argument on the pending motions for summary judgment. (Doc. 134; Doc. 149). Each motion is now ready for disposition. (Doc. 134; Doc. 149; Doc. 178).

## II.    STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000).

---

[2] Because the Court will grant Catamaran's motion for summary judgment and as a result close this case, the Intervenors' motion to Intervene will be **DENIED** as **MOOT**. (Doc. 178).

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson, 477 U.S. at 249.*

"Although the party opposing summary judgment is entitled to the 'benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact.'"[3] *Velentzas v. U.S.*, No. 4: CV-07-1255, 2010 WL 3896192, *7 (M.D. Pa. August 31, 2010) (quoting *Goode v. Nash,* 241 F. App'x 868, 868 (3d Cir. 2007)) (citation omitted). The opposing party "cannot rest solely on assertions made in the pleadings, legal memorandum, or oral argument." *Goode,* 241 F. App'x at 868 (internal quotation marks omitted). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

---

[3] *See also Beenick v. LeFebvre*, 684 F. App'x 200, 206 (3d Cir. 2017) (stating the purpose of requiring parties to cite to particular parts of the record in their briefs about a motion for summary judgment is to "assist the court in locating materials buried in a voluminous record") (quoting Fed. R. Civ. P. 56(c)(1)(A)).

4

With respect to cross-motions for summary judgment, "[e]ach movant must demonstrate that no genuine issue of material fact exists; if both parties fail to carry their respective burdens, the court must deny [both] motions." *Quarles v. Palakovich*, 736 F. Supp. 2d 941, 946 (M.D. Pa. 2010) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)). However, a federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell*, 206 F.3d at 278.

## III. DISCUSSION

Remaining in this case are Count I and Count II of Lakeview's amended complaint. (Doc. 53, at 19-24). In these Counts, Lakeview alleges a breach of contract claim and a breach of the implied duty of good faith and fair dealing claim. (Doc. 53, at 19-24). Both parties move for summary judgment on Lakeview's breach of contract claim. (Doc. 134; Doc. 149; Doc. 149-2). Catamaran seeks summary judgment on Lakeview's claim for breach of the implied covenant of good faith and fair dealing claim, arguing that Lakeview has withdrawn this claim. (Doc. 134; Doc. 157, at 7). In its briefing, Lakeview does not explicitly challenge this assertion; however, at oral argument Lakeview stipulated that the claim was not withdrawn.[4]

---

[4] In its brief in opposition to Lakeview's motion for summary judgment, Catamaran concludes: "Lakeview expressly withdrew its claim for breach of the implied warranty of good faith and fair dealing (Count II)." (Doc. 157, at 7). To support this proposition, Catamaran cites to a footnote from Lakeview's brief in opposition to Catamaran's motion for summary judgment. (Doc. 157, at 7). During oral argument, Lakeview's counsel tried to explain that the claim was not withdrawn, however, he struggled to find support for this conclusion in his briefing. Regardless, because Catamaran is entitled to summary judgment on the merits, the

5

Because the parties agree that the Catamaran Provider Manual should govern this dispute, the Court will defer to the Illinois choice of law provision therein, which neither party challenges. Under Illinois law, the elements of a breach-of-contract claim are: (1) a valid contract, (2) substantial performance by plaintiff, (3) breach, and (4) damages caused by that breach. *Ivey v. Transunion Rental Screening Sols., Inc.*, 215 N.E.3d 871, 877 (Ill. 2022). To state a claim for breach of the implied covenant of good faith and fair dealing in Illinois, a plaintiff must plausibly allege (1) the parties had an enforceable contract (2) "breaching a specific duty imposed by the contract other than the covenant of good faith and fair dealing" (3) the defendant failed to reasonably and with proper motive exercise its contractual discretion; and (4) damages. *AAA Gaming LLC v. Midwest Elecs. Gaming, LLC*, No. 16 CV 4997, 2016 WL 6476549, at *3 (N.D. Ill. Nov. 2, 2016). While the parties dispute both the breach and damages elements of Lakeview's breach of contract claim, the instant motions may be resolved by looking solely at the damages element. Under Illinois law, "[d]amages are an essential element of a breach of contract action [and thus a bad faith claim] and a claimant's failure to prove damages entitles the defendant to judgment as a matter of law." *In re Illinois Bell Telephone Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013); *see also City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F. Supp. 3d 730, 768 (N.D. Ill. 2019) (stating damages are required for bad faith claim).

---

Court finds no reason to deem Catamaran's arguments as unopposed or Lakeview's claim as withdrawn.

In support of its damages allegation, Lakeview puts forward only an expert report ("the *Mabe* Report"). (Doc. 150, at 20; Doc. 157, at 23-24). Catamaran argues the *Mabe* Report should be excluded from this litigation because it was prepared for another case (*Mabe v. OptumRx*, No. 3:17-CV-01102) and produced late in this one without any of the accompanying data relied upon by experts as is required under Rule 26 of Federal Civil Procedure. (Doc. 157, at 23-29). In their briefing and at oral argument, the parties agreed that Lakeview's claims can only survive if this Court considers the *Mabe* Report. (Doc. 150, at 20; Doc. 157, at 23). Having contemplated the specific circumstances of this case, especially this Court's previous discovery Orders and the prejudice admitting this expert report would have on Catamaran, this Court cannot, in good faith, consider the *Mabe* Report. Thus, as Lakeview concedes, it cannot satisfy its burden to establish that it suffered any damages as a result of Catamaran's actions. Both Lakeview's claims therefore must fail.

Rules 26 and 37 of Federal Procedure force this result. Under Rule 26, "[a] party must make expert disclosures at the times and in the sequence that the court orders." *See Garcia v. United States*, No. 3:17CV1910, 2023 WL 8281686, at *6 (M.D. Pa. Nov. 30, 2023). Under Rule 37, a party that fails to disclose an expert report "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Arguing that Lakeview's actions are neither substantially justified nor harmless, Catamaran puts forward three bases for the *Mabe* Report's exclusion. (Doc. 157, at 24-31).

First, Catamaran explains that the *Mabe* Report should be excluded because the report is untimely. (Doc. 140, at 24-25; Doc. 157, at 27). The deadline for Lakeview to serve expert reports in this case was October 31, 2016. (Doc. 35, ¶ 6.5). Lakeview served the *Mabe* Report

almost four years later, on February 16, 2021. (Doc. 141, ¶ 51). In defense of its late production, Lakeview contends that fact discovery had not yet closed as of February of 2021 because the Court had still not disposed of all the parties' outstanding discovery disputes.[5] (Doc. 150, at 20). This argument is flawed. The timeline in which the Court disposes of the discovery disputes before it does not serve to alter discovery deadlines unless the relevant responsive Orders do so explicitly. This is especially true in this case where the Court had already denied Lakeview's request to reopen discovery and modify the discovery deadlines around a year before the expert report was served, in 2020. (Doc. 100, at 4-6). In its Order denying Lakeview's request to reopen discovery, this Court stated "although the case is not yet trial ready, the court agrees that to allow plaintiff to turn back the clock and require defendant to engage in additional discovery, would be prejudicial to defendant." (Doc. 100, at 6). This considered, the Court finds Lakeview's decision to disregard the Court's directives and serve the *Mabe* Report anyway not only to be "substantially unjustified," but also directly in violation of Court Orders. Fed. R. Civ. P. 37(c)(1). Such behavior will not be rewarded now by allowing the *Mabe* Report's introduction, especially given it is "well within the district court's discretion to exclude an expert's testimony and report if the offering party failed to disclose the expert and produce the report prior to the district court's prescribed discovery

---

[5] The Court here recognizes Lakeview's frustration with the discovery in this matter, and the delays caused by discovery issues. (*See e.g.*, Doc. 91). However, the Court is bound by previous Orders in this case, including Orders in which the Court refused to modify the discovery deadlines and re-open fact discovery. (*See* Doc. 100). Thus, the deadline to serve expert reports was October 31, 2016.

deadline." *Brown*, 341 F.R.D. at 573; *see also McCann v. Miller*, 502 F. App'x 163, 172 (3d Cir. 2012); Fed. R. Civ. P. 37(c)(1).

Second, Catamaran asserts that the *Mabe* report was prepared for, and properly served, in another case and thus cannot be relied upon in this one. (Doc. 140, at 25). As Catamaran states and this Court agrees, "[u]nder Federal Rule 26(a)(2), 'production of expert discovery in one case does not satisfy or excuse a party's disclosure obligations in the other.'" (Doc. 140, at 5) (quoting *United States v. Brace*, 334 F.R.D. 472, 479 (W.D. Pa. 2020) (granting motion to strike expert reports "never properly served during discovery in the instant litigation" and served only in another "not consolidate action.")). Faced with similar circumstances where a party seeks to rely on an expert report prepared for another case, courts have found exclusion to be a reasonable sanction. *See e.g., Jakobovits as Tr. of Lite Tr. I v. PHL Variable Ins. Co.*, No. 17-CV-3527-ARR-RER, 2023 WL 3741993, at *3 (E.D.N.Y. May 31, 2023), *appeal dismissed*, No. 23-997, 2024 WL 3311102 (2d Cir. May 10, 2024) ("I will not permit plaintiff to rely on expert reports from another case."); *see also e.g., Brace*, 334 F.R.D. at 484 (explaining counsel had been advised that "documents produced in one civil action would not thereby be considered part of the record in another."). This Court finds the same to be true here.

Most troubling is Catamaran's third contention. Catamaran avers that Lakeview has violated Rule 26(a)(2)(B) by refusing to disclose facts and data on which the *Mabe* expert relied. (Doc. 157, at 25). Catamaran asserts Lakeview's failure to turn over this data "is deeply prejudicial to Catamaran, because, without the missing data files and formulas, Catamaran cannot replicate the experts' models or damages calculations." (Doc. 157, at 25). Lakeview does not directly address this argument in its briefing. (Doc. 150; Doc. 167). Instead,

Lakeview replies "[b]ecause (1) Defendant has had the expert report since February 2021, and (2) deposed the expert and produced responding expert reports more than three years ago, Defendant is not prejudiced by the report and there is no basis for disregarding it." (Doc. 150, at 6). In response, Catamaran reminds the Court that all the discovery conducted in response to the *Mabe* Report was done so in connection with and for the benefit of the *Mabe* litigation, as "discovery had already closed in this case." (Doc. 157, at 27). Thus, the data relied upon by the *Mabe* experts to make conclusions about *this* litigation remains unaccounted for.

In a puzzling turn of events, at oral argument Lakeview announced that, just one day prior to argument and almost four years after the *Mabe* Report was served (and thus eight years after the discovery deadline had passed) Lakeview was finally able to turn over the materials allegedly used by its experts to prepare the *Mabe* Report. Catamaran responded to this declaration by explaining to the Court that, understandably, counsel had not had time to review these documents. Catamaran further argued that forcing them to do so at this stage of the litigation would be extremely prejudicial to their defense. The Court agrees.

While Lakeview's late production is generally perplexing, it does little to absolve Lakeview of its continued failure to fulfill its discovery obligations. On a more practical note, because the *Mabe* Report was served in the *Mabe* case, the Court anticipates that a percentage of the produced materials may not even be related to this litigation. Forcing Catamaran to go through these materials and make such determinations is not in the best interest of this case or the broader judicial economy. Even if the *Mabe* Report had been timely and correctly served in this case, this four-year delay in producing the files relied upon by the experts would be cause for the exclusion of the *Mabe* Report.

There is no disputing that Lakeview has disregarded its discovery duties under Rules 26 and 37 and that exclusion is appropriate in this case. However, in coming to this conclusion and considering the severity of exclusion as a sanction, the Court finds it necessary also to consider the four Rule 37 exclusion factors designated by the Third Circuit, which are as follows:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.
> *Brown v. Robert Packer Hosp.*, 2022 WL 1143533, 570, 573-74 (M.D. Pa. 2022) (quoting *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 148 (3d Cir. 2000)).

Consideration of these factors weighs in favor of excluding the *Mabe* Report. First, Catamaran would be prejudiced by the introduction of the *Mabe* Report in this case because it would force Catamaran to engage in substantial document review and discovery efforts nearly a decade after the discovery deadlines have closed. As Catamaran articulates, this would cause a "massive disruption" to this litigation, as in an effort of fairness a new round of expert discovery would need to be opened, rebuttal reports would need to be drafted, further summary judgment briefing would be required, and potential *Daubert* motions would need to be filed. (Doc. 157, at 28). All of this would impose great cost and burden on both parties. Further, as explained *supra*, because the *Mabe* Report was created in anticipation of the *Mabe* litigation, allowing it to be used in this case would cause the confusion that would naturally arise "from injecting into this case matters that were at issue in the [*Mabe*] Litigation." *See Brace*, 334 F.R.D. at 486. Second, neither Lakeview nor Catamaran can cure this prejudice. There is nothing Lakeview could do to lessen the burden introducing this report would have

11

on Catamaran. It is the Court that would need to reopen discovery and reset the deadlines in this case. It would not be in the best interests of the Court to do this, which leads to factor three. Were this Court to consider the *Mabe* Report at this juncture, it would be incredibly disruptive to the orderly disposition of this case. Again, the parties were already denied an extension of the discovery deadlines in this case *almost five years ago* and have filed motions for summary judgment. (Doc. 34; Doc. 49; Doc. 100). Fourth, as stated by Catamaran, "Lakeview flagrantly and willfully disregarded this Court's expert disclosure deadlines—first in 2016, and then again in 2021 and 2024 by attempting to import the *Mabe* expert report into this case years after the deadline ran without permission." (Doc. 157, at 30). There is no question that Lakeview defied this Court's discovery Orders by serving additional discovery unto Catamaran and willfully disregarded its discovery obligations by failing to produce the materials relied upon by experts until now, on the eve of trial and after substantial motions for summary judgment have been filed. These actions were not harmless or substantially justified. This all considered, a review of the Third Circuit's factors weighs in favor of exclusion. The *Mabe* Report will be excluded from this litigation. *See In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999), amended, 199 F.3d 158 (3d Cir. 2000) (finding the district court did not abuse its discretion after applying these factors and excluding a late filed expert report and stating "Counsel's failure to comply with the deadlines imposed by the District Court is inexcusable. The District Court recognized it as such, and responded appropriately.").

 As Lakeview concedes, without the *Mabe* Report there is nothing in the record from which a reasonable juror could conclude that Lakeview suffered damages as a result of Catamaran's alleged breach of contract and breach of its implied duties. Lakeview's breach of contract and breach of good faith and fair dealing claims therefore must fail. Judgment will

12

be rendered in Catamaran's favor and its motion for summary judgment will be **GRANTED**. (Doc. 134). Lakeview's motion for summary judgment will be **DENIED**. (Doc. 149).

The Court understands that after over a decade of litigation, this ending to this case may be frustrating and anti-climactic to the parties. However, the Court is bound by its previous discovery deadlines, rulings, and findings of prejudice to Catamaran and the Court. Because there is no way for Lakeview to sustain its claims without the admittance of the *Mabe* Report, this action cannot survive.

IV.    CONCLUSION

Based on the foregoing, Catamaran's motion for summary judgment is **GRANTED**. (Doc. 134). Lakeview's partial motion for summary judgment is **DENIED**. (Doc. 149). The Intervenors' motion to intervene is **DENIED** as **MOOT**. (Doc. 178). **JUDGMENT** is to be rendered in Catamaran's favor. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**BY THE COURT:**

Dated: February 27, 2025          *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States District Judge**

13